WILLIAM G. BLAIR AND PEGGY J. BLAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blair v. Commissioner
Docket No. 9368-90
United States Tax Court
T.C. Memo 1991-456; 1991 Tax Ct. Memo LEXIS 505; 62 T.C.M. (CCH) 762; T.C.M. (RIA) 91456; September 19, 1991, Filed *505 Decision will be entered under Rule 155. William G. and Peggy J. Blair, pro se. Michael W. Bitner, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b) (3) [1] and Rule 180 et seq. Respondent determined deficiencies in petitioners' Federal income taxes for the years 1986, 1987, and 1988 in the amounts of $ 5,308, $ 5,446, and $ 6,024, respectively, and additions to the tax as follows: Section
Section
Section
Section
Section
Year
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)
6661
6653(a)(1)(B)
1986
$ 521.00
$ 265.00
--
$ 1,327.00
*
1987
$ 1,361.00
$ 272.00
--
$ 1,362.00
*
1988
$ 301.00
--
$ 301.00
$ 1,506.00
--
*506 The issues for decision are: (1) Whether petitioners had unreported income during the years in question; and (2) whether petitioners are liable for the additions to tax. Some of the facts were stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by reference. Petitioners resided at Edwardsville, Illinois, when they filed their petition. In the notice of deficiency, respondent determined that petitioners underreported their income in the amounts of $ 30,687, $ 36,764, and $ 43,228, respectively, for the years 1986, 1987, and 1988. This was based upon respondent's determination that petitioners' books and records did not properly reflect their income. Petitioners' income was redetermined by respondent under the "source of income and application of funds" method. At trial, respondent conceded that the underreported income for 1987 was $ 27,496 instead of the $ 36,764 shown in the notice of deficiency. Respondent further conceded three errors in the notice of deficiency, none of which bear upon the underreported income issue: (1) An error in computation of self-employment taxes for 1986 and 1987; (2) the attribution of $ 470 self-employment *507 income during 1987 to petitioner Peggy J. Blair instead of petitioner William G. Blair; and (3) the statement in the notice of deficiency that petitioners' tax was calculated on the basis of petitioners' status as married, filing separately, when in fact the calculation was correctly based upon petitioners' status as married, filing jointly. Petitioners challenged respondent's determination that they underreported their income and that they are liable for the additions to tax. Since 1977, William G. Blair (petitioner) has been in the business of providing heating and air conditioning installation and repair services, operating as a sole proprietor under the trade name "Bill's Heating and Cooling." In calculating gross receipts which were reported on Schedules C of petitioners' 1986, 1987, and 1988 income tax returns, petitioners reported only the amounts deposited in business bank accounts during those years. However, not all of the income from the business was deposited in business bank accounts. Petitioner received cash payments for services which were not deposited in his bank accounts and, therefore, were not included in gross income on petitioners' tax returns. Petitioners *508 reported losses, for each of the 3 years, from their business activity. During the years in question, petitioner Peggy J. Blair received social security disability payments in her own account in the amounts of $ 8,598 in 1986, $ 8,710.80 in 1987, and $ 9,081.60 in 1988. Petitioners' two sons also received social security benefits totaling $ 6,744 in 1986, $ 6,840 in 1987, and $ 6,038 in 1988. Respondent determined that petitioners' books and records were inadequate to properly reflect their income and reconstructed petitioners' income for the years at issue using the "source of income and application of funds" method. The source and application of funds method is based upon the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds the taxpayer's reported sources of funds for that same period has taxable origins, unless the taxpayer establishes that the difference between the funds totally applied and the totally reported funds is attributable to nontaxable sources such as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. [2] Under the source and application of funds method, unreported taxable income *509 is determined by ascertaining the amount of purchases of goods and services which are not attributable to either the resources on hand at the beginning of the year or to nontaxable receipts during the year, or both. Another consideration is whether the amount determined by respondent as the "funds applied" is correct. *510 In the notice of deficiency, respondent determined petitioners' unreported income as follows: 1986
1987
1988
Sources of funds
Adjusted gross income (loss)
per return
$ (9,268)
* $ (11,241)
$ (14,876)
Depreciation, per return
--
32 1,055 Social security benefits,
per return
8,598 8,711 9,082 Unused net operating loss
for carryover to 1987
--
none
--
Total sources of funds
$   (670)
$   (2,4980
$   (4,739)
Application of funds
Limitation on meals expense
for 1987, per return
$ --
$ 13 $ --
Home loan payments at $ 706
per month
--
4,236 8,472 Other personal, family, and
living expenditures
30,017 30,017 30,017 Totals
$ 30,017 $ 34,266 $ 38,489 Excess of Applications over
Sources
$ 30,687 $ 36,764 $ 43,228 Adjustment, increase for
taxable social security
none
none
none
Total unreported income
$ 30,687 $ 36,764 $ 43,228 *511 Respondent determined that the cash payments received by petitioner in the operation of his business, which were not deposited in petitioners' bank accounts, constituted the source of petitioners' unreported income. Petitioners denied this and, additionally, challenged respondent's determination that their personal, family, and living expenditures for each of the years in question amounted to $ 30,017 per year, as shown above. Petitioners further contend that their expenditures were accounted for by a combination of nontaxable sources, including (1) funds received by them as gifts from family members during 1987 and 1988 totaling more than $ 30,000; (2) approximately $ 25,000 charged to credit cards in 1985 and 1986; [3] and (3) social security payments received by them on behalf of their two minor sons. The social security benefits shown above in respondent's computation of petitioners' unreported income included only the social security benefits received by Mrs. Blair and did not include the benefits received by petitioners' two sons. Accordingly, petitioners contend that their application of funds was not in the amount determined by respondent, and their sources of nontaxable *512 funds adequately covered their applied funds. Respondent's determinations in a notice of deficiency are presumed correct, and the burden of proof is on petitioners to establish that the determinations are in error. ; Rule 142(a). This record does not support a finding that respondent incorrectly determined that petitioners failed to report as income the cash receipts from their business which were not deposited in their business bank accounts. Accordingly, respondent is sustained on this determination. The question, accordingly, becomes what were the amounts of unreported income. Respondent determined those amounts, as shown above, under the source and application of funds method. Petitioners first challenge the $ 30,017 per year which respondent determined as petitioners' family and living *513 expenses for each of the years in question. Petitioners testified at trial that their actual living expenses were $ 17,065.32, $ 17,411.52, and $ 21,406.20, respectively, for 1986, 1987, and 1988. Thus, petitioners bear the burden of showing that the living expenses determined by respondent in computing petitioners' unreported income are incorrect. The amounts determined by respondent were the amounts which were provided by petitioners themselves to respondent's revenue agent during the audit of their 1987 return. The amounts offered by petitioners at trial ranged from 43 to 29 percent less than the amounts petitioners provided the revenue agent. However, the amounts claimed at trial were wholly unsupported by any documentary evidence. On this record, the Court finds that petitioners did not establish that respondent's determination of $ 30,017 per year for living expenses is in error. Respondent, therefore, is sustained on this aspect of the source and application of funds method. Petitioners' next contend that their major source of funds during 1987 and 1988 was gifts from Mrs. Blair's mother and grandparents. However, other than petitioners' testimony [4] that approximately *514 $ 30,000 was given to them by Mrs. Blair's family during 1987 and 1988, there is no proof of such gifts in evidence. Petitioners informed respondent's agent during the audit of their returns that they received a total of $ 450 in 1987 and $ 500 in 1988 as gifts from family members. The Court finds that petitioners received no significant amounts as gifts during the years at issue. Similarly, petitioners presented no documentary evidence of amounts borrowed by incurring charges on credit cards and made no showing of specific expenditures for living expenses by credit card charges in any of the years at issue. Therefore, the Court finds that petitioners have not shown that any of the expenditures determined by respondent were paid by loans attributable to credit card charges. Respondent is sustained *515 as to this portion of the source and application of funds method. Petitioners' remaining contention is that respondent failed to consider, as a nontaxable source of income, the social security payments received by petitioners on behalf of their minor children. Respondent did not dispute petitioners' testimony that their two sons, ages 5 and 16 in 1986, received social security payments of $ 6,744, $ 6,840, and $ 6,038, respectively, during 1986, 1987, and 1988. Respondent contends that petitioners did not establish that the sons' social security benefits were applied by petitioners to family living expenses rather than for the exclusive use of the children. Specifically, respondent points to the purchase of two automobiles in 1987 by petitioners' older son, Chris, for which Mr. Blair co-signed promissory notes. One of the notes for Chris' automobile required monthly payments in the amount of $ 221.29 for 48 months. Petitioners contend that all payments on such notes, together with the cost of insurance for the vehicles, were made by Chris from wages he earned working at McDonald's. The Court finds that the social security payments received by Chris, the older son, were applied *516 by Chris in payment of his car notes and such amounts were not applied by petitioners toward their family living expenses. Since the other son was only 6 years of age, it is plausible to conclude that the social security benefits he received were used by petitioners for their family living expenses and, therefore, such funds represented an application of funds from a nontaxable source. The Court finds that, of the total social security benefits received by the sons, one-half is attributable to each son. Accordingly, the Court sustains petitioners to the extent that respondent's determination of unreported income should be reduced by the amounts of $ 3,372, $ 3,420, and $ 3,019, respectively, for 1986, 1987, and 1988, representing the nontaxable social security benefits received by petitioners' younger son. Respondent determined that petitioners are liable for additions to tax for failure to timely file their tax returns under section 6651(a)(1) for each of the years 1986, 1987, and 1988. Petitioners' only expressed reason for the late filing of their returns is that they could not afford to pay a preparer to prepare their returns. The Court finds that such explanation is not *517 a reasonable cause for late filing. Accordingly, respondent is sustained on this issue. Respondent also determined that petitioners are liable for the additions to tax for negligence under section 6653(a)(1)(A) and (B) for taxable years 1986 and 1987, and under section 6653(a)(1) for 1988. Section 6653(a)(1), as applicable to taxable years 1986 and 1987, provides that, if any part of an underpayment of income tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of (A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. For taxable year 1988, section 6653(a)(1) provides that, if any part of an underpayment is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . *518 The Commissioner's determination is presumptively correct and will be upheld unless the taxpayers are able to rebut the presumption by showing they used due care. See . Petitioners have not shown that they used due care in filing their returns. They failed to report significant amounts of taxable income in each of the years at issue. Therefore, respondent's determination on this issue is sustained. The final issue is the addition for substantial understatement of income tax liability under section 6661. Section 6661(a) provides for an addition to tax in the amount of 25 percent of the understatement if there is substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Section 6661(b)(1)(A)(i) and (ii). Petitioners failed to show that respondent's determination with respect to the section 6661 addition to tax is unwarranted. Accordingly, respondent's determination is sustained. To reflect respondent's concession and errors as well as this Court's findings, Decision will be entered under Rule 155. *519 Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the entire deficiency.↩
2. Because a taxpayer's assets on hand at the beginning of a taxable period may explain the application of funds during the ensuing period, the source and application of funds method has been equated with the "cash expenditures" method. In the "cash expenditures" method, respondent first determines the taxpayer's assets at the beginning of the taxable period in order to determine the funds available for expenditure during the ensuing taxable period, and then determines the amount by which the expenditures exceeded the reported income for the taxable period. In this case, petitioners' assets at the beginning of the tax periods were not a consideration as a source of funds nor did petitioners claim such assets as a source of funds. Respondent, therefore, in employing the source and application of funds method, did not compute petitioners' net worth and assumed it was the same at the beginning and end of each tax period. Petitioners produced no evidence to show that this assumption was in error. See .↩
*. The negative $ 11,241 adjusted gross income reported by petitioners for 1987 included $ 9,268 as a net operating loss carryover from 1986. Since respondent determined that petitioners did not have a net operating loss for 1986, petitioners, accordingly, did not have a carryover loss to 1987. Respondent conceded at trial, as noted earlier, that the correct adjusted gross income for 1987 was a negative $ 1,973 rather than a negative $ 11,241, resulting in a bottom line figure of $ 27,496 instead of $ 36,764 unreported income.↩
3. Petitioners admit that a portion of the total $ 25,000 credit card charges claimed were incurred in 1985 and did not specify amounts incurred for 1986 expenses.↩
4. Mrs. Blair testified that her mother and grandparents mortgaged real property to banks and gave the loan proceeds to petitioners to pay living expenses. No evidence of such indebtedness was presented to the Court.↩